**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

HERMES CONSOLIDATED, INC., a Delaware corporation,
d/b/a Wyoming Refining Company,

      Plaintiff,

vs.

RED EAGLE OIL, INC., a Wyoming corporation,
f/k/a Hinze, Inc., d/b/a Hinze Oil Company, and
BRAD HINZE, an individual,

      Defendants.

---

### COMPLAINT AND JURY DEMAND

---

For its Complaint, Hermes Consolidated, Inc., d/b/a Wyoming Refining Company

states and alleges as follows:

### PARTIES

1.      Hermes Consolidated, Inc., is a Delaware corporation that is engaged in

the refining, distribution, and sale of petroleum products.  Hermes' principle place of

business is located at 1600 Broadway, Suite 2500, Denver, Colorado  80202.  Hermes

does business in Wyoming under the name of Wyoming Refining Company (and will,

therefore, be referred to in this Complaint as "Wyoming Refining").

2.      Red Eagle Oil., Inc., f/k/a Hinze, Inc., d/b/a Hinze Oil Company ("Red

Eagle"), is a Wyoming corporation that is engaged in the wholesales and retail

distribution of refined petroleum products.  Red Eagle purchases petroleum products

from Wyoming Refining and supplies many services stations owned by Cenex / CHS. Red Eagle's principle place of business is located at 53 County Road 2AB, Cody, Wyoming  82414.

3.     Brad Hinze is the Treasurer of Red Eagle and resides at 813 Shadow Street, Cody, Wyoming  82417.  Wyoming Refining is informed, and on that basis believes, that defendant Brad Hinze has been an officer of Red Eagle at all times pertinent to this Complaint.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332(a)(1) and (c)(1) because there is complete diversity between Wyoming Refining and Red Eagle and between Wyoming Refining and Mr. Hinze. Wyoming Refining is incorporated in Delaware and has its principle place of business in Colorado.  Red Eagle is incorporated and has its principle place of business in Wyoming.  Mr. Hinze is a Wyoming resident.  The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

5.     This Court has personal jurisdiction over Red Eagle because:  (a) in its contract with Wyoming Refining, Red Eagle (then named Hinze, Inc.) submitted to "the jurisdiction of the courts of [Colorado]" for enforcement of the contract at issue in this action; (b) Red Eagle negotiated and entered into contracts with Wyoming Refining in Colorado; (c) Red Eagle tendered payment for its pre-breach purchase of goods (the breach of which contract is the basis of the breach of contract and C.R.S. § 13-21-109 claims in this Complaint) to Wyoming Refining in the City and County of Denver; (d) the

parties knew any breaches of the contract would have real, material and adverse effects on Wyoming Refining in Colorado, and (e) the claims of this Complaint arise from Red Eagle's business transactions within the State of Colorado.

6.      This Court has personal jurisdiction over Brad Hinze because:  (a) in the personal guarantee he provided Wyoming Refining, Mr. Hinze submitted to the jurisdiction of the courts of Colorado for the enforcement of that guarantee; and (b) he signed the personal guarantee to induce Wyoming Refining to extend credit to Red Eagle knowing that, in the event of its or his default, there would be real, material and adverse effects to Wyoming Refining in Colorado.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(3) because Red Eagle and Mr. Hinze are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

### A.    The 1999 Agreement Between Wyoming Refining and Red Eagle.

8.      On July 30, 1999, Wyoming Refining and Red Eagle entered into an "Agreement for Terms and Conditions of Sale for Petroleum Products" ("Agreement"). Wyoming Refining attaches a copy of the Agreement as Exhibit 1 to this Complaint, and incorporates it by this reference.  Mr. Hinze signed the Agreement in his capacity as the Treasurer of Hinze, Inc. (using the trade name Hinze Oil).

9.      Under the Agreement, Red Eagle agreed to "pay for petroleum products in the manner and at the terms designated by [Wyoming Refining] and on such credit terms as [Wyoming Refining] may establish for [Red Eagle] from time to time." [Exhibit 1, ¶ 6].  In addition, Red Eagle agreed that Wyoming Refining would charge a

"late payment charge," not to exceed the legal rate of interest, on all amounts Red Eagle owed on invoices that it did not timely pay.  [Id. ¶ 7].

10.     The parties also agreed:  "If it is necessary for [Wyoming Refining] to institute legal proceedings to collect amounts owed by [Red Eagle], [Red Eagle] shall be responsible for reasonable costs and attorneys' fees" Wyoming Refining incurs. [Exhibit 1, ¶ 7].

11.     The Agreement is valid and enforceable.

**B.     Mr. Hinze's Personal Guarantee of Red Eagle's Obligations.**

12.     Wyoming Refining required additional security before it would extend credit to Red Eagle, so, on July 30, 1999, it asked for, and Mr. Hinze both agreed to and executed, a personal guarantee ("Guarantee").  Wyoming Refining attaches a copy of the Guarantee as Exhibit 2 to this Complaint, and incorporates it by this reference. Under the terms of the Guarantee, Mr. Hinze agreed to "guarantee prompt repayment when due of all amounts owing on account in the part or in the future by [Red Eagle] to [Wyoming Refining] for petroleum products sold to [Red Eagle]."  [Exhibit 2, § 1].

13.     The Guarantee also obligates Mr. Hinze to pay all of Red Eagle's defaulted indebtedness to Wyoming Refining "on demand" and all "reasonable attorneys' fees and all costs and other expenses [Wyoming Refining incurs] in collecting or compromising any indebtedness of [Red Eagle] guaranteed [under the Guarantee] or enforcing th[e] Guarantee against [Mr. Hinze]."  [Exhibit 2, § 1].

14.    The Guarantee binds Mr. Hinze until Mr. Hinze delivers to Wyoming Refining "written notice revoking [the Guarantee]."  [Exhibit 2, § 2].  As of the date of this Complaint, Mr. Hinze has not provided Wyoming Refining any such notice.

15.    The Guarantee is valid and enforceable.

**C.    Red Eagle's Performance Under the Agreement.**

16.    In 2010 and into early 2011, Red Eagle's typical withdrawal activity under the Agreement was no more than approximately one or two loads of fuel per day, and Wyoming Refining had not experienced any issues with Red Eagle either refusing or not being able to pay its outstanding invoices.

17.    From April 1, 2011 through April 5, 2011, Wyoming Refining delivered to Red Eagle certain petroleum products more particularly described in invoice nos. 331540, 331541, 331542, 331543, 331544, 331545, 331546, 331674, 331675, 331800, and 331801.  Wyoming Refining attaches a copy of its Customer Drafting Report showing the invoice numbers and value of Red Eagle's withdrawals from April 1 through April 5, 2011 as Exhibit 3 to this Complaint, and incorporates it by this reference.  Those deliveries have a total invoice value of $337,446.32.  Wyoming Refining reasonably and justifiably relied on its prior business relationship and course of dealing with Red Eagle – and the fact that Red Eagle had not disclosed to Wyoming Refining that it was experiencing any financial difficulties – in entering into the April 1 though April 5, 2011 transactions.

18.    On or about April 11, 2011, representatives of another supplier of Cenex / CHS service stations contacted Wyoming Refining and informed it of industry rumors

that Red Eagle was in financial trouble and that Red Eagle planned to acquire as much

product from Wyoming Refining as possible before the allocation ran out.

19.     In response, and also on or about April 11, 2011, Patti Haberling, Manager

of Marketing and Sales for Wyoming Refining, contacted Dale Hinze, President of Red

Eagle, and inquired about these rumors.  Mr. Hinze confirmed that Red Eagle was

struggling with its cash flow, but advised that Red Eagle was in the process of

refinancing and stated that Red Eagle would pay all of its creditors.  Wyoming Refining

reasonably and justifiably relied on Mr. Hinze's assurances by not declaring a default at

that time or requiring further assurances at that time and as was its right under the

Uniform Commercial Code, and, instead, permitted Red Eagle to continue its

withdrawals through April 12, 2011.

20.     Proving the truth of the rumors (and despite that it knew it was

experiencing cash flow problems and would be unable to pay Wyoming Refining), and

acting consistently with those rumors, on April 11, 2011, Red Eagle pulled seven loads

of petroleum products under the Agreement – approximately 3.5 to 7 times more than

its normal delivery.

21.     In fact, between April 8 and April 12, 2011, Wyoming Refining delivered to

Red Eagle certain petroleum products more particularly described in invoice nos.

332232, 332233, 332234, 332235, 332366, 332367, 332368, 332369, 332370, 332371,

332372, 332373, and 332452.  Wyoming Refining attaches a copy of its Customer

Drafting Report showing the invoice numbers and value of Red Eagle's withdrawals

from April 8 through April 12, 2011 as Exhibit 4 to this Complaint, and incorporates it by

this reference.  Those deliveries have a total invoice value of $399,903.32.  Wyoming Refining reasonably and justifiably relied on its prior business relationship and course of dealing with Red Eagle – and the fact that Red Eagle had not disclosed any financial difficulty to Wyoming Refining – in entering into the April 8 though April 12, 2011 transactions.

22.     As of April 12, Red Eagle's outstanding balance owed to Wyoming Refining totaled $730,372.34 (before adding contractually permitted interest and removing the discount).

23.     On or about April 18, 2011, adhering to the parties' ordinary course arrangements for payment and pursuant to paragraph 6 of the Agreement, Wyoming Refining drafted the bank representing Red Eagle for the products Wyoming Refining delivered to Red Eagle between April 1 and April 5, 2011.

24.     The bank did not honor Wyoming Refining's presentation of the April 18, 2011 draft.  Wyoming Refining attaches a copy of the notification it received from Bank of America that it would not honor the April 18, 2011 draft as Exhibit 5 to this Complaint, and incorporates it by this reference.

25.     According to the bank's notification, the bank declined the draft because of a "stop payment" that Red Eagle ordered.  [Exhibit 5].

26.     On or about April 25, 2011, again adhering to the parties' ordinary course arrangements for payment and pursuant to paragraph 6 of the Agreement, Wyoming Refining drafted the bank representing Red Eagle for the goods Wyoming Refining delivered to Red Eagle between April 8 and April 12, 2011.

27.     Again, the bank did not honor Wyoming Refining's presentation of the April 25, 2011 draft.  Wyoming Refining attaches a copy of the notification it received from Bank of America that it would not honor the April 25, 2011 draft as Exhibit 6 to this Complaint, and incorporates it by this reference.

28.     According to Exhibit 6, the bank declined the draft because of a "stop payment" that Red Eagle ordered.  [Exhibit 6].

29.     Red Eagle has not paid the outstanding $737,349.64 to Wyoming Refining for the goods Wyoming Refining delivered to Red Eagle in April, the invoice due dates have passed, and Red Eagle is delinquent for not less than this amount (not including contractually permitted interest or late payment charges).

**D.     Wyoming Refining's Collection Efforts.**

30.     On April 28, 2011, Andrew J. Petrie, counsel for Wyoming Refining, sent a letter to Hinze Oil Company and Hinze, Inc., in which he enclosed documentation that Red Eagle stopped payment on its drafts to Wyoming Refining and demanded that Red Eagle:  (a) pay all of the amounts due – totaling $739,349,64 (which total includes $2,000 of attorneys' fees Wyoming Refining had incurred at that point); and (b) return the goods Wyoming Refining delivered to Red Eagle in April, under Section 2-702 of the Uniform Commercial Code.  Wyoming Refining attaches a copy of Mr. Petrie's April 28, 2011 letter to Hinze Oil Company and Hinze, Inc. as Exhibit 7 to this Complaint, and incorporates it by this reference.

31.     Mr. Petrie's April 28, 2011 letter to Hinze Oil Company and Hinze, Inc. satisfies the notice requirements of C.R.S. § 13-21-109(4), including, as that statute

requires:  (a) the date the drafts were issued; (b) the name of the bank on which the

drafts were drawn; (c) the name of the payee; (d) the face amount of the drafts; (e) a

statement of the total amount due; (f) a statement that the maker has fifteen days to

make payment in full of the total amount due; and (g) a statement that Red Eagle may

be liable for three times the face amount of the check by not less than one hundred

dollars, and that the court may award court costs and attorneys' fees to the prevailing

party.

32.    Also on April 28, 2011, Mr. Petrie sent a letter to Brad Hinze, in which he

enclosed the April 28, 2011 letter to Hinze Oil Company and Hinze, Inc., and demanded

Mr. Hinze pay the total amount Red Eagle owed to Wyoming Refining under the

Agreement within fifteen days.  (Although the Guarantee contains no requirement that

Wyoming Refining wait any amount of time before demanding the guarantor make

payment, and solely as an accommodation, Wyoming Refining allowed Mr. Hinze the

same grace period the Colorado statute provides Red Eagle.)  Wyoming Refining

attaches a copy of Mr. Petrie's April 28, 2011 letter to Brad Hinze (including enclosures)

as Exhibit 8 to this Complaint, and incorporates it by this reference.

33.    In response to these letters, counsel for Red Eagle and Brad Hinze

acknowledged Red Eagle's debts to Wyoming Refining, but neither Red Eagle nor

Mr. Hinze have paid Wyoming Refining the amounts due as of the date of this

Complaint.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract (Agreement) – Red Eagle)**

34.     Wyoming Refining restates and incorporates by this reference all of the allegations contained in paragraphs 1 through 33 as if fully set forth herein.

35.     Red Eagle and Wyoming Refining entered into the Agreement for the purchase and finance of petroleum products.  Accordingly, Red Eagle has valid contractual obligations under the Agreement, including, but not limited to, the obligation to "pay for petroleum products in the manner and at the times" that Wyoming Refining designates.

36.     From April 1 to April 12, 2011, Red Eagle withdrew petroleum products from Wyoming Refining and – under the parties' ordinary course arrangements for payment and pursuant to paragraph 6 of the Agreement – Wyoming Refining drafted the bank representing Red Eagle for those goods.

37.     Red Eagle's bank did not honor these drafts because Red Eagle "stopped payment" on them, in violation of its contractual obligations in the Agreement.

38.     Red Eagle's counsel has acknowledged the outstanding debt and has not challenged its amount, but Red Eagle has failed to pay for any of the petroleum products it withdrew between April 1 and April 12, 2011.

39.     Red Eagle's breaches of its obligations in the Agreement have harmed, and will continue to harm, Wyoming Refining in amounts it will prove at trial, together with its attorneys' fees and costs incurred in attempting to collect the amounts due it.

## SECOND CLAIM FOR RELIEF
### (Violation of C.R.S. § 13-21-109 – Red Eagle)

40.     Wyoming Refining restates and incorporates by this reference all of the allegations contained in paragraphs 1 through 39 as if fully set forth herein.

41.     Between April 1 and April 12, 2011, Red Eagle obtained valuable petroleum products from Wyoming Refining and paid for the goods, under the parties' ordinary course arrangements for payment and the Agreement, via drafts drawn on the Bank of America.  The face amount of these drafts total $730,372.34.

42.     On or about April 18 and April 25, 2011, Wyoming Refining presented the drafts for payment.

43.     Because Red Eagle placed "stop payments" on the drafts, Red Eagle's bank refused to honor them.

44.     On April 28, 2011, Wyoming Refining provided notice as set forth in C.R.S. § 13-21-109(4), including: (a) the date the drafts were issued; (b) the name of the bank on which the drafts were drawn; (c) the name of the payee; (d) the face amount of the drafts; (e) a statement of the total amount due; (f) a statement that the maker has fifteen days to make payment in full of the total amount due; and (g) a statement that Red Eagle may be liable for three times the face amount of the check by not less than one hundred dollars, and that the court may award court costs and attorneys' fees to the prevailing party.

45.     Red Eagle did not pay Wyoming Refining within fifteen days of the C.R.S. § 13-21-109 notice, and has not paid Wyoming Refining the amount due as of the date of this Complaint.

46.     The mitigating circumstances in C.R.S. § 13-21-109(2)(b) do not exist here.

47.     Under C.R.S. § 13-21-109(2)(a), Wyoming Refining is now entitled to recover from Red Eagle three times the face amount of the drafts, totaling no less than $2,191,117.02, together with its attorneys' fees and costs incurred in attempting to collect the amounts due it.

### THIRD CLAIM FOR RELIEF
### (Fraud – Red Eagle)

48.     Wyoming Refining restates and incorporates by this reference all of the allegations contained in paragraphs 1 through 47 as if fully set forth herein.

49.     From April 1 to April 12, 2011, Red Eagle concealed from, and did not inform, Wyoming Refining that it was insolvent (or would imminently become insolvent). During the same period, Wyoming Refining permitted Red Eagle to dramatically expand its daily purchases of petroleum products on credit that Wyoming Refining extended.

50.     Red Eagle planned to purchase as much petroleum products from Wyoming Refining as it could, before (a) Wyoming Refining learned that Red Eagle was insolvent; and (b) Red Eagle's allotment of petroleum products ran out.

51.     Red Eagle concealed its financial condition from Wyoming Refining with the intent to make Wyoming Refining believe that it was financially strong while it executed its plan to steal petroleum products from Wyoming Refining.

52.     The Agreement permits Wyoming Refining to modify or rescind its terms of credit to Red Eagle "at any time for any reason."  Red Eagle's creditworthiness and financial condition were and are material to Wyoming Refining's decision to continue

Red Eagle's credit account and to deliver petroleum products without requiring immediate payment in cash.

53.     In accordance with its scheme, Red Eagle withdrew $737,349.64 worth of petroleum products from Wyoming Refining between April 1 and April 12, 2011, and paid for all of the goods on a credit account that Wyoming Refining extended to Red Eagle.

54.     When Red Eagle withdrew these goods, it knew:  (a) it would be unable to pay for them; (b) Wyoming Refining did not know of Red Eagle's financial difficulties and insolvency (or imminent insolvency); (c) under the ordinary course of its payment arrangements with Wyoming Refining and pursuant to paragraph 6 of the Agreement, Wyoming Refining would draft Red Eagle's bank for the balances of the outstanding invoices; (d) as per the parties' previous course of dealing and ordinary course of business in the trade, there is a delay between the date Red Eagle withdraws petroleum products from Wyoming Refining and the date Wyoming Refining invoices Red Eagle for the purchase; (e) as per the parties' previous course of dealing and ordinary course of business in the trade, there is a delay between the date Wyoming Refining invoices Red Eagle for purchases and the date Wyoming Refining drafts Red Eagle's bank to pay for the invoices; and (f) it could stop payment on its drafts to Wyoming Refining days after taking possession of the petroleum products it withdrew from Wyoming Refining (and therefore would not have to pay for its purchases between April 1 and April 12, 2011).

55.     On or about April 11, 2011, an industry source advised Wyoming Refining that Red Eagle was in financial trouble.  In response, Patti Haberling, Wyoming Refining's Manger of Marketing and Sales, contacted Dale Hinze, President of Red Eagle.  During that call, Mr. Hinze confirmed that Red Eagle was having financial trouble, but attempted to alleviate Ms. Haberling's concerns by stating that all Red Eagle would pay all of its creditors.

56.     Reasonably and justifiably relying on (a) its prior business relationship and course of dealing with Red Eagle; (b) the fact that Red Eagle had not disclosed any financial difficulty to Wyoming Refining; and (c) Mr. Hinze's assurances, Wyoming Refining did not declare a default or require further assurances on April 11 and permitted Red Eagle to continue its withdrawals through April 12, 2011.

57.     On or about April 18, 2011 and April 25, 2011, Wyoming Refining presented drafts to the bank representing Red Eagle for the goods delivered between April 1 and April 5, 2011 and April 8 and April 12, 2011, respectively.  Wyoming Refining's drafts were in accordance with the parties' ordinary course arrangements and paragraph 6 of the Agreement.

58.     Before the bank paid the drafts, however, and consistent with its initial plan to acquire petroleum products without paying Wyoming Refining, Red Eagle stopped payment on both drafts.  As a result, its bank refused to pay Wyoming Refining for any of the petroleum products Red Eagle "bought" between April 1 and April 12, 2011.

59.     Red Eagle's increased – and in fact efforts to maximize – purchases on credit Wyoming Refining extended, when it had no ability to pay (and plainly had no intent to pay), amounts to obtaining the goods on the basis of fraud.

60.     Red Eagle's fraudulent actions and concealments have harmed Wyoming Refining in amounts it will prove at trial.

### FOURTH CLAIM FOR RELIEF
### (Civil Theft – Red Eagle)

61.     Wyoming Refining restates and incorporates by this reference all of the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

62.     Red Eagle knowingly obtained and/or exercised control over Wyoming Refining's property – namely petroleum products Red Eagle withdrew from April 1 through April 12, 2011 – by deception.

63.     Red Eagle took Wyoming Refining's property knowing that it would be unable to pay for the goods – and, therefore, intended take possession of the goods without any claim or entitlement right to them.

64.     Red Eagle intended, and continues to intend, to use Wyoming Refining's property in a manner that will permanently deprive Wyoming Refining of its use and benefit.

65.     Red Eagle's theft of Wyoming Refining's property has harmed and will continue to harm Wyoming Refining in amounts it will prove at trial.

**FIFTH CLAIM FOR RELIEF**
**(Conversion – Red Eagle)**

66.     Wyoming Refining restates and incorporates by this reference all of the allegations contained in paragraphs 1 through 65 as if fully set forth herein.

67.     Prior to delivery, the petroleum products Wyoming Refining delivers to its customers, including Red Eagle, is Wyoming Refining's personal property.

68.     Red Eagle has wrongfully taken petroleum products from Wyoming Refining from April 1, 2011 through April 12, 2011, and knew that it could not – and, therefore, intended that it would not – pay Wyoming Refining for those deliveries.

69.     Red Eagle intended, and continues to intend, to use Wyoming Refining's property in a manner that will permanently deprive Wyoming Refining of its use and benefit.

70.     Wyoming Refining demanded return of, or just compensation for, the converted property.  Red Eagle refused.

71.     Red Eagle's refusal is without lawful claim of right, without color of title, and without other interest in the goods superior to Wyoming Refining.

72.     Red Eagle's wrongful conversion has proximately caused significant damage and injury to Wyoming Refining in amounts it will prove at trial.

**SIXTH CLAIM FOR RELIEF**
**(Reclamation of Goods:  C.R.S. § 4-2-702 – Red Eagle)**

73.     Wyoming Refining restates and incorporates by this reference all of the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.     Wyoming Refining delivered goods to Red Eagle on credit from April 1 through April 12, 2011.

75.     From April 1 through April 12, 2011, Red Eagle was – and continues to be – insolvent.

76.     Wyoming Refining discovered, first through industry rumors and later through the President of Red Eagle, that Red Eagle was likely insolvent and definitely lacked the wherewithal to pay for the petroleum products it was taking.

77.     Wyoming Refining demanded reclamation of the goods under C.R.S. § 4-2-702.  Red Eagle failed to acknowledge, comply with, or otherwise respond to Wyoming Refining's request.

78.     Wyoming Refining is entitled to reclaim the goods it delivered to Red Eagle between April 1 and April 12, 2011, while Red Eagle was insolvent.

### SEVENTH CLAIM FOR RELIEF
### (Negligent Nondisclosure – Red Eagle)

79.     Wyoming Refining restates and incorporates by this references all of the allegations contained in paragraphs 1 through 78 as if fully set forth herein.

80.     Red Eagle and Wyoming Refining entered into multiple business transactions between April 1 and April 12, 2011 in which Red Eagle withdrew petroleum products from Wyoming Refining and, in accordance with the parties' ordinary course arrangements and paragraph 6 of the Agreement, Red Eagle paid for these withdrawals on credit that Wyoming Refining extended to Red Eagle ("Business Transactions").

81.     Red Eagle's financial condition and solvency are facts that are basic and material to Wyoming Refining's continued sales – especially sales on credit Wyoming

Refining extends – to Red Eagle, and were basic and material to Wyoming Refining in entering into the Business Transactions.

82.     Red Eagle failed to disclose to Wyoming Refining that it was suffering financial difficulties and was insolvent (or would imminently become insolvent) prior to completing the Business Transactions.

83.     Prior to, and at the time of, the Business Transactions, Red Eagle knew or should have known:  (a) it was suffering serious financial difficulties and was insolvent (or would imminently become insolvent); (b) Wyoming Refining was about to enter into the Business Transactions; (c) Wyoming Refining did not know Red Eagle's true financial condition; (d) if it disclosed its financial condition to Wyoming Refining, including that it was insolvent (or would imminently become insolvent), prior to completing the Business Transactions, that information may reasonably and justifiably induce Wyoming Refining to refrain completing the Business Transactions or first to require Red Eagle to provide adequate assurances of its ability to perform as was its right under the Uniform Commercial Code; and (e) Wyoming Refining would reasonably expect Red Eagle to disclose its insolvency (or imminent insolvency) prior to completing the Business Transactions due to its longstanding contractual and business relationship with Red Eagle, the customs of the trade, and other objective circumstances.

84.     Red Eagle, therefore, had the duty to exercise reasonable care to disclose its financial condition and insolvency (or imminent insolvency) to Wyoming Refining prior to consummating the Business Transactions.

85.     Red Eagle's breach of its duty to disclose has harmed, and will continue to harm Wyoming Refining in amounts it will prove at trial.

### EIGHTH CLAIM FOR RELIEF
### (Breach of Contract (Guaranty) – Brad Hinze)

86.     Wyoming Refining restates and incorporates by this references all of the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87.     Brad Hinze entered into the Guarantee with Wyoming Refining to provide Wyoming Refining additional security for the Agreement.  Accordingly, Brad Hinze – as personal guarantor of Red Eagle's debts under the Agreement – has valid contractual obligations under the Guarantee, including but not limited to an obligation to make "prompt repayment when due of all amounts owing on account in the past or in the future by [Red Eagle] to [Wyoming Refining] for petroleum products sold to [Red Eagle]" and an obligation to "pay to [Wyoming Refining] on demand" in the event Red Eagle defaults and fails to pay Wyoming Refining on any indebtedness incurred in the purchase of petroleum product.

88.     From April 1 to April 12, 2011, Wyoming Refining delivered to Red Eagle petroleum products, with invoice values totaling $737,349.64.

89.     Red Eagle paid for these deliveries on a credit account that Wyoming Refining extended.  Because of these purchases of petroleum products, Red Eagle became indebted to Wyoming Refining.

90.     Red Eagle has refused to pay, has not paid, and has affirmatively stopped payment on drafts to Wyoming Refining for the purchase of the petroleum products delivered between April 1 and April 12, 2011.

91.     As a result, Red Eagle is in default regarding the payments that Mr. Hinze guaranteed.

92.     Wyoming Refining notified Mr. Hinze of Red Eagle's default and, instead of requiring immediate payment ("on demand"), requested Mr. Hinze pay Red Eagle's outstanding petroleum products purchase indebtedness within fifteen days.

93.     Mr. Hinze failed to pay Red Eagle's debt to Wyoming Refining within fifteen days and, as of the date of this Complaint, has not paid Wyoming Refining for Red Eagle's indebtedness.

94.     Mr. Hinze's breach of the Guarantee has harmed, and will continue to harm Wyoming Refining in amounts it will prove at trial, together with its attorneys' fees and costs incurred in attempting to collect the amounts due it.

WHEREFORE, Wyoming Refining requests that the Court enter judgment in its favor, and against Red Eagle and Brad Hinze, as follows:

A.     Awarding Wyoming Refining damages, including contractual interest charges pursuant to paragraph 7 of the Agreement, in amounts it will prove at trial that it has suffered as a result of Red Eagle's breach of the Agreement;

B.     Awarding Wyoming Refining three times the damages in an amount no less than $2,191,117.02 pursuant to C.R.S. §§ 13-21-109(1)(c) and 13-21-109(2)(a);

C.     Awarding Wyoming Refining damages in amounts it will prove at trial that it has suffered as a result of Red Eagle's unlawful, tortious, and fraudulent actions;

D.     Awarding Wyoming Refining damages in amounts it will prove at trial that it has suffered as a result of Brad Hinze's breach of the Guarantee;

E.      Awarding Wyoming Refining its reasonable costs and attorneys' fees incurred in its effort to collect the amounts due it, under paragraph 7 of the Agreement and section 1 of the Guarantee;

F.      Awarding Wyoming Refining its reasonable costs and attorneys' fees from Red Eagle, under C.R.S. § 13-21-109(2)(a);

G.      To the extent possible, requiring Red Eagle to return (and for Wyoming Refining to reclaim) the goods Wyoming Refining delivered to Red Eagle from April 1 through April 12, 2011; and

H.      Awarding such other and further relief as the Court determines is appropriate.

## JURY DEMAND

Pursuant to F.R.C.P. 38, Wyoming Refining demands a trial by jury of all issues properly tried to a jury.

DATED:  June 7, 2011.                    Respectfully submitted,


s/  Andrew J. Petrie
Andrew J. Petrie
Christopher T. Patrick
**FEATHERSTONE PETRIE DESISTO LLP**
600 Seventeenth Street, Suite 2400-S
Denver, Colorado  80202-5424
Telephone:  303-626-7100
Facsimile:  303-626-7101
apetrie@featherstonelaw.com
cpatrick@featherstonelaw.com
*Attorneys for Plaintiff*